# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**MARGARET CERNIGLIA,**

     **Plaintiff,**

**-v-**                      **CASE NO. 2:09-cv-631-FtM-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

     **Defendant.**

_____/

## OPINION AND ORDER[1]

Plaintiff filed an application for a period of disability and disability insurance benefits [DIB] on August 24, 2004, alleging an onset of disability of February 1, 2004 (Tr. 16). The Agency denied this application in initial and reconsideration determinations (Tr. 30-31, 37-38). Plaintiff timely requested and appeared at a hearing on August 22, 2007, before Administrative Law Judge (ALJ) Steven D. Slahta. (Tr. 24). In the decision dated January 23, 2008, the ALJ found Plaintiff not disabled (Tr. 29).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ's final decision is now ripe for review under section 205(g) of the Social Security Act, U.S.C. § 405(g).

---

[1]    Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference signed by District Judge John E. Steele dated December 15, 2009. (Doc. 15).

The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal their memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I.   SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The decision of Administrative Law Judge Steven D. Slahta, January 23, 2008, found Plaintiff was not under a disability as defined in the Social Security Act, at any time from February 1, 2004, the alleged onset date, through the date of the decision 20 C.F.R. 404.1520(g).

At Step 1 the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2004 through the date of the decision. Plaintiff's

-2-

date last insured ("DLI") is December 31, 2009 (Tr. 18).   At Step 2 the ALJ found Plaintiff

suffers from the severe impairment of spondylosis (Tr. 18).   At Step 3 the ALJ found

through the date of decision,  Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (Tr. 19).  At Step 4  the  ALJ  determined  Plaintiff has  the

residual functional capacity ("RFC") to perform sedentary work with a sit/stand option,

occasional balancing, stooping, crouching, kneeling, and crawling, no climbing, and no

exposure to hazards or temperature extremes (Tr. 19-20).  At Step 5 the ALJ found Plaintiff

was unable to perform  her past relevant work. Relying on the testimony from a vocational

expert (VE), the ALJ found Plaintiff could perform other jobs in the national economy

consistent with her "RFC".

In reviewing a decision by the Commissioner, the District Court is bound to uphold

the Commissioner's findings if  they are supported by substantial evidence and based upon

proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Lewis v. Callahan*, 125 F.3d 1436,

1439-40 (11th Cir. 1997).  Factual findings are conclusive if supported by "substantial

evidence," which is more than a scintilla and consists of such relevant evidence as a

reasonable person would accept as adequate to support a conclusion.  *Lewis v. Callahan*,

125 F.3d at 1440.  The Court does not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner.  *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002).  If  the Commissioner's decision is supported by substantial evidence,

the Court must affirm even if the evidence predominates against the decision. *Wilson v. Barnhart*, 284 F.3d at 1291.  However, the Court must conduct an exacting examination of whether the Commissioner followed the appropriate legal standards in deciding the claim and reached the correct legal conclusions.  *Wilson v. Barnhart*, 284 F.3d at 1291.  The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted will mandate reversal. *Keeton v. Department of Health and Human Servs.*, 21 F.3d at 1066.

## II.  Review of Facts and Conclusions of Law

**A.      Background Facts:**

Plaintiff was forty-three years old at the  time of the ALJ's decision (Tr. 24). Plaintiff reported she has a high school education (Tr.  76) and worked in the past as a shipping and receiving supervisor at UPS for approximately 15 years (Tr. 555). Plaintiff reports she has been unable to work because of spinal disease (Tr. 71).

Plaintiff has a history of lumbar spine pain. On May 3, 1999, Plaintiff underwent a lumbar spine x-ray at the request of Dr. Eileen Spillane and Dr. David T. Goldman of South Bay Medical Care (Tr. 249). The x-ray showed spondylolisthesis and spondylolysis at L/5-S/1 with no evidence of a recent fracture.  The record shows Plaintiff continued to work despite her condition (Tr. 249).

Plaintiff was treated for pneumonia in 2001 by Dr. Goldman (Tr. 242). A CT scan performed on May 21, 2001, showed multiple non calcified bilateral pulmonary nodules.  A

chest x-ray was performed on July 2, 2001 (Tr. 155). The chest x-ray showed a series of small nodules scattered throughout the lungs which was suspicious for nodular lung pathology (Tr. 155).   Plaintiff received continued evaluation for her lung nodules and pneumonia with Dr. Goldman (Tr. 214-220, 229-230). On September 26, 2002, a chest x-ray showed a small left apical pneumothorax and multiple millimeter-sized pulmonary granulomas consistent with prior varicella pneumonia (Tr. 216-217). The following month, Plaintiff was diagnosed with a left sided pneumothorax and was hospitalized by Dr. Spillane.  Plaintiff was advised not to return to work until follow-up in her office, three to five days after discharge and follow-up with Dr. Kota.  Plaintiff was advised to avoid "bending, straining, lifting and excessive weight bearing"  (Tr 141-147).

On January 30, 2003, Plaintiff underwent a pulmonary function test (Tr. 152).  The study showed "[r]estrictive lung disease affecting the ERV, consistent with her obesity, and mild hyperinflation, the O2 saturation is normal on room air.  These pulmonary function tests have remained essentially unchanged when compared to those tests done in April, 2001".  Signed by Paul Bohensky, M.D. (Tr. 152).

Plaintiff reported falling at work on an "oil slick" on June 24, 2003 and hurting her back.  Dr. Goldman wrote on a prescription pad the following: ""[T]he above patient was seen here for back pain and is totally disabled.  This note is valid for two weeks until ortho evaluation.  Pt. Must receive ortho clearance" (Tr. 198-202). A lumbar spine x-ray showed "[g]rade II spondylolisthesis noted at L5-S1 with narrowing of the joint space and mild

levoconvex scoliosis also present". Signed by Maria D. Magieri, M.D.  Plaintiff was prescribed Vicoden (Tr. 199).

In July of 2003, Plaintiff received treatment from Dr. Leon Finkelstein, an orthopedist, after injuring her back two days prior at work (Tr. 165-169). Examination revealed "[t]enderness to palpation across her back, spasm in the paravertebral musculature, and Plaintiff could not stand completely straight. Forward flexion affords her a little bit of relief.  Lateral bending exacerbated her pain as does extension. She has no significant radicular findings on examination today.  Her straight leg raising is negative.  She has good reflexes at the knees and the ankles.  She has no obvious motor deficit noted on either leg. Her sensation appears to be intact.  Review of the x-ray she brings with her reveals a grade II spondylolisthesis at the L-5 level.  IMPRESSION: Back  sprain superimposed on a pre-existing spondylolisthesis". She was prescribed Celebrex and Skelaxin and was told to continue on Vicoden and stay out of work until further notice. Plaintiff was asked to check back in a week.  (Tr. 165-166). An  MRI was performed on July 16, 2003, that showed spondylolysis with spondylolisthesis at L5-S1 (Tr. 169).

Plaintiff was referred to Dr. Fred Gutman, a neurosurgeon, in August 2003 for a neurological consultation (Tr. 172-174). Examination revealed a slow antalgic gait and Plaintiff could heel toe walk only with great difficulty due to pain. Dr. Gutman found Plaintiff to be a  candidate for lumbar fusion but determined that "a trial of physical therapy is warranted.  I have referred her for physical therapy and will see her in follow-up in about

six weeks.  Should she fail to improve, consideration will be made for lumbosacral fusion".

At Plaintiff's follow-up visit on September 2, 2003, Dr. Gutman noted "She has had over two weeks of physical therapy since her last visit and reports some temporary relief, although she is not ready for any sustained activity.  She notes she still has significant pain on the day in between her physical therapy sessions."  Dr. Gutman did not feel Plaintiff was ready to return to work and scheduled her for follow-up in 4-6 weeks.  (Tr. 172).

On January 28, 2004, Plaintiff was treated at South Bay Medical by Dr. Goldman and Dr. Louise Cardellina, P.A. for anxiety and depression as well as stress (Tr. 183-192). Plaintiff was still not employed.  Plaintiff related that she was sleeping better after being prescribed Xanax (Tr. 188).  Plaintiff was advised to follow-up with Dr. Paul Bohensky (sic) for a chest x-ray (Tr. 205).

Plaintiff had a chest x-ray done on June 3, 2004. The chest x-ray showed "nodular densities visualized throughout both lungs appear stable, consistent with sequeae of prior granulomatous disease. There is no focal airspace disease of acute interval onset.  The heart size and mediastinal width are within normal limits.  Pneumothorax is not seen.  There is dextroscoliosis of the thoracic spine.  The soft tissues appear stable and there is no evidence of significant interval change".  Signed by Barry Armandi, M.D.

At the request of the state agency, on November 16, 2004, Dr. Stanley Rabinowitz examined Plaintiff.  Physical examination revealed "normal range of motion testing through-out including the lumbar spine with mild pain evidence, but no paravertebral muscle spasm.

Range of motion testing was within normal limits without active joint inflammation, joint deformity, instability of contracture.  Straight leg raising was negative at 90 degrees in both the sitting and supine positions".  "The patient was able to ambulate about the examining room without the use or need of an assistive device.  Gait and station were normal.  Grip strength and digital dexterity were preserved.  The patient had no difficulty getting on and off the examining table or squatting, but had mild difficulty with heel-and-toe walking and could not hop on either leg.  The neurological examination did not reveal evidence of nerve root irritation (Tr. 276-281)".

At the request of the state agency, on November 26, 2004, Paul Miske, Ph.D., examined Plaintiff.  Dr. Miske notes that "[b]oth the patient and the present writer were confused as to the need of the psychological evaluation".  Plaintiff was alert and oriented and reported driving herself to the office, arriving on time.   Plaintiff did not appear to meet diagnostic criteria for any psychiatric condition. Plaintiff was found to be capable of managing her own financial affairs.  (Tr. 290-291).

Plaintiff was examined by Dr. Gene Mahaney on December 23, 2004 (Tr. 307-309). Plaintiff's chief complaint was low back pain with radicular symptoms.  Dr. Mahaney assessed "[l]ow back pain with lumbar radiculopathy, right greater than left, obesity.  Plan: Plaintiff to be scheduled for a lumbar epidural steroid injection under fluoroscopic guidance with her next visit; patient to return to the Pain Clinic approximately one to two weeks following her procedure for further evaluation and treatment as needed (Tr. 308)".

On June 13, 2006, Dr. Krishman and Kenneth Miller, Physician's Assistant, examined Plaintiff for shoulder pain.  Plaintiff reported pain over her entire right arm. Examination revealed she was unable to lift her arm more than 45 degrees and she had decreased strength and slight edema to the upper forearm. Plaintiff was advised to use heat, continue with pain medications, consider an MRI of the spine and stop smoking (Tr. 496).

On September 14, 2006, Plaintiff presented to Lee Memorial Emergency Room with her chief complaint being right shoulder pain.  Hospital notes reveal Plaintiff had been seen at the E.R. two days prior and was given pain medications and told to follow-up with Dr. Otis as they were unable to rule out a rotator cuff injury. An x-ray showed a little area of calcification in the shoulder. Plaintiff was given an injection of Dilaudid,  Phenegran, Norflex and Depo-medrol and was prescribed Prednisone and again referred to Dr. Otis (Tr. 484).

On September 18, 2006, Dr. James Otis, an orthopedist, examined Plaintiff  (Tr. 478-481). She presented with sudden onset of pain in her right shoulder and spasms in her triceps. Examination revealed significant pain with abduction and forward flexion all consistent with subacromial bursitis. She was given an injection of Depo-Medrol and Lidocaine into her shoulder and she was prescribed Voltaren and Percocet.

On July 30, 2007, Plaintiff was again seen by Dr. R. Krishnan and Kenneth Miller, P.A. for a check up. (Tr. 497). Plaintiff's prescriptions were refilled.  On August 7, 2007, Mr. Miller prepared a medical source statement (Tr. 498-506) finding Plaintiff could

frequently lift and carry less than two pounds, stand or walk less than thirty minutes and sit for less than thirty minutes in an eight hour work day. Plaintiff was unable to climb ramps, scaffolds, stairs, ladders or ropes, stoop, crouch or crawl. Mr. Miller opined Plaintiff would need four or more extra breaks of fifteen minutes each. Plaintiff was to avoid even moderate exposure to extreme cold, wetness, humidity, vibration, fumes, odor, dust, gases and poor ventilation as well as hazards (machinery and heights).

Mr. Miller determined that pain interfered with her concentration up to 2/3 of an eight hour day and with her ability to deal with changes in a routine work setting and she would be required to elevate her feet above heart level. Mr. Miller opined that Plaintiff had been disabled from substantial work at least since December 1, 2003. Plaintiff suffered from ankylosing spondylitis with findings established of unilateral or bilateral sacroilitis.

At the request of the administrative law judge, on November 19, 2007, Dr. Martha Pollack, a disability consultant, examined Plaintiff. Examination revealed Plaintiff walked with a somewhat small-stepped gait with a stooped forward posture. Range of motion in the back was slightly diminished. Plaintiff had some tenderness to palpation over the lumbar spine with some slight paravertebral muscle spasms and was unable to hop. She was diagnosed with history of low back pain due to degenerative joint disease and spondylosis and history of pneumonia and spontaneous pneumothorax. Dr. Pollack also completed a medical source statement opining that Plaintiff  could never lift and carry twenty pounds or more due to low back pain. She could only sit, stand, or walk for thirty minutes at one time

without interruption and could only sit for four hours and stand or walk for two hours out of

an eight hour day. Due to back pain, Plaintiff needed to change positions frequently and

could only occasionally operate foot controls. Due to pain, Plaintiff  could never climb

ladders or scaffolds, stoop, kneel, crouch or crawl (Tr. 507-518)

**B.    SPECIFIC ISSUES**

> **I.    THE COMMISSIONER ERRED BY FAILING TO PROVIDE ANY REASON FOR DISCREDITING DR. GOLDMAN'S  OPINION and DISCREDITING THE OPINIONS OF THE OTHER TREATING AND EXAMINING PHYSICIANS**

The Plaintiff argues that the ALJ did not acknowledge or provide any reason for

discrediting Dr. Goldman's multiple treating opinions that his patient was unable to work.

The record shows that in June 2003, Dr. Goldman stated that Plaintiff was unable to work

until cleared by an ortho evaluation (Tr. 198, 202), and in January 2004, Dr. Goldman stated

Plaintiff was unable to work until February 2004 (Tr. 189). Dr. Goldman's disability

opinions were not medical opinions and concerned an issue reserved for the Commissioner

(Tr. 189, 198, 202). 20 C.F.R. § 404.1527(e); Social Security Ruling (SSR) 96-5p. Opinions

on issues such as whether a claimant is disabled, the claimant's "RFC", and the application

of vocational factors, are "opinions on issues reserved for the Commissioner because they

are administrative findings that are dispositive of a case; i.e., that would direct the

determination or decision of disability." 20 C.F.R. § 404.1527(e); *Lewis v. Callahan*, 125

F.3d 1436, 1440 (11th Cir. 1997); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

The ALJ was not compelled to give Dr. Goldman's opinions any significant weight.

Moreover, Dr. Goldman indicated Plaintiff had been unable to work less than a year, and he did not opine that she would be unable to work for at least twelve consecutive months (Tr. 189, 198, 202). 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Thus, giving full credit to Dr. Goldman's opinion would not establish that Plaintiff was disabled for at least twelve consecutive months as required by the Social Security Act.

Furthermore, Dr. Goldman's opinions of temporary disability are inconsistent with the other evidence of record. In November 2004, Dr. Rabinowitz, a consultative examiner, reviewed Plaintiff's medical records, including Dr. Goldman's June 2004 reports (Tr. 276-78). Dr. Rabinowitz noted Plaintiff's range of motion examinations, including the lumbar spine, were within the normal range, with mild pain evident (Tr. 278). He reported Plaintiff was able to ambulate without an assistive device (Tr. 278). Dr. Rabinowitz further noted Plaintiff had a negative straight leg raise exam in both sitting and supine positions, normal gait and station, preserved grip strength and digital dexterity, and no evidence of nerve root irritation (Tr. 278). Plaintiff was also able to get on to and off the examination table and squat without difficulty (Tr. 278).

The opinions of the state agency physicians also support the ALJ's decision and undermine Dr. Goldman's temporary disability opinion (Tr. 282-89, 332-39). 20 C.F.R. §§

404.1512(b)(6), 404.1513(c), 404.1527(d)(4), (f)(2); SSR 96-6pState agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record. 20 C.F.R. § 404.1527(f)(2)(I); SSR 96-6p. Although the state agency consultants did not review all of the evidence, their opinions are supported by the medical evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(3), (4); *Crawford v. Commissioner of Social Security*, 363 F.3d at 1159-60 (11th Cir. 2004); *Phillips v Barnhart*, 357 F.3d at 1240-41 n.8 (11th Cir. 2004). Given the evidence of record, Dr. Goldman's temporary disability opinions were not entitled to great weight.

Plaintiff also challenges the ALJ's evaluation of Dr. Finkelstein's July 2003 statement that Plaintiff was unable to work (Tr. 165). However, as noted above, opinions on issues such as whether a claimant is disabled, the claimant's "RFC", and the application of vocational factors, are "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §404.1527(e). Moreover, the weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the medical source's examining and treating relationship with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. 20 C.F.R. § 404.1527(d); SSR 96-2p. The opinion of a physician, even a treating physician,

may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(d); SSR 96-2p; *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

Substantial evidence supports the ALJ's decision to give little weight to Dr. Finkelstein's opinion (Tr. 22, 165-71). As the ALJ noted, the record does not include clinical records from Dr. Finkelstein that would support his opinion (Tr. 22). The record includes an examination note from June 2003 accompanied by a letter dated the same day, with an attached worker's compensation form (Tr. 165-68). The record also contains two examination notes from 1999, plus a 1999 letter signed by Dr. Finkelstein (Tr. 170-71). This evidence is not sufficient to establish that Dr. Finkelstein had an ongoing treating relationship with Plaintiff. Therefore, Dr. Finkelstein was not a treating physician and his opinion was not entitled to any special deference. 20 C.F.R. §§ 404.1502, 404.1527(d)(1), (2); *Crawford*, 363 F.3d at 1160.

Further, regardless of whether Dr. Finkelstein is considered a treating physician, he failed to provide medical signs or findings to support his opinion, which also is inconsistent with the record as a whole. Dr. Finkelstein's June 2003 examination notes do not provide objective medical signs or findings to support the limitations he included in his opinion. In June 2003 where he noted that despite tenderness and pain, there were no significant radicular findings on examination, Plaintiff had a negative straight leg raise test, good

reflexes, intact sensation, and no motor deficits in either leg (Tr. 167). Dr. Finkelstein did

opine that Plaintiff had back sprain superimposed on a pre-existing spondylolisthesis, but a

diagnosis does not establish disabling limitations. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988)   Dr. Finkelstein failed to provide sufficient medical evidence to support his

opinion; thus, the ALJ properly gave little weight to Dr. Finkelstein's opinion.

Plaintiff next objects to the ALJ's treatment of Dr. Gutman's August 2003 statement.

Dr. Gutman stated that Plaintiff was not ready to return to work (Tr. 172), but the ALJ

determined that Dr. Gutman's opinion was not supported by the evidence (Tr. 22). The ALJ

noted that Dr. Gutman noted improvement in Plaintiff's condition while she was undergoing

physical therapy (Tr. 22, 172). Dr. Gutman stated that if Plaintiff showed significant

improvement at her next appointment, he would recommend she try returning to work (Tr.

172). Dr. Gutman did not opine that Plaintiff would be unable to work for at least twelve

consecutive months (Tr. 172). 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§

404.1505(a), 404.1509. Thus, giving full credit to Dr. Gutman's opinion would not establish

that Plaintiff was disabled for at least twelve consecutive months as required by the Social

Security Act.

Plaintiff further challenges the ALJ's evaluation of Kenneth Miller, P.A.

(Physician's Assistant). In August 2007, Mr. Miller completed a medical source statement

indicating Plaintiff could lift/carry less than two pounds, stand and/or walk for less than 30

minutes, sit for less than 30 minutes, and could not climb, stoop, crouch, or crawl;

essentially, Mr. Miller was stating Plaintiff was disabled (Tr. 498-502). However, Mr. Miller

was not an acceptable medical source and, thus, his opinion was not entitled to any

special consideration. 20 C.F.R. § 404.1513(a), (d)(1).

Mr. Miller failed to provide medical signs or findings to support his opinion. As the

ALJ noted, the examination records from Mr. Miller and his colleagues show few findings

(Tr. 22, 312-17, 496-97). The ALJ also noted that although Plaintiff had decreased range of

motion and tenderness, the examination was otherwise normal with a normal neurological

exam (Tr. 22, 312-17, 496-97).

Finally, Plaintiff objects to the ALJ's treatment of the evaluation of Dr. Pollock,

a consultative examiner. In November 2007, Dr. Pollock noted Plaintiff had some

tenderness over her lumbar spine with slight muscle spasm (Tr. 508). Dr. Pollock

also reported Plaintiff had no difficulty getting on to and off the examination table, no

difficulty heel and toe walking, and no difficulty squatting (Tr. 508). Plaintiff could not

hop, but she had a negative straight leg raise test (Tr. 508). Neurologically, Dr. Pollock

stated Plaintiff's motor and sensory function were intact with symmetrical reflexes and no

disorientation (Tr. 510). Dr. Pollock completed a medical source statement indicating

Plaintiff could lift/carry up to 20 pounds, sit a total of 4 hours, stand a total of 2 hours, and

walk a total of 2 hours with the ability to change positions frequently (Tr. 513-14). Plaintiff

could not climb ladders or scaffolds, stoop, kneel, crouch, or crawl (Tr. 516).

-16-

The ALJ gave considerable weight to Dr. Pollock's opinion that Plaintiff was limited to sedentary work with the need to change positions frequently (Tr. 22). 20 C.F.R. § 404.1527(d)(4) (providing that generally more weight is given to opinions consistent with the record). The ALJ, however, rejected Dr. Pollock's opinion with respect to Plaintiff's abilities to stoop, kneel, crouch, crawl or climb ladders and scaffolds (Tr. 22). The ALJ's rejection of those parts of Dr. Pollock's report was supported by substantial evidence because her opinions regarding Plaintiff's abilities to stoop, kneel, crouch, crawl or climb ladders and scaffolds were inconsistent with other parts of her assessment nor did she identify any objective medical findings to support them (Tr. 22).

Dr. Pollock's evaluation revealed some diminished range of motion over the lumbar spine and a stepped gait, but otherwise the examination was generally within normal limits (Tr. 22). The ALJ noted that Dr. Pollock's opinion regarding Plaintiff's postural limitations appears to be based on Plaintiff's subjective complaints. A claimant's subjective complaints are not an acceptable basis for an opinion. 20 C.F.R. § 404.1527(d)(3). Accordingly, the ALJ properly rejected Dr. Pollock's opinions regarding Plaintiff's abilities to stoop, kneel, crouch, crawl or climb ladders and scaffolds.  In sum, the ALJ's "RFC" finding that Plaintiff had the ability to perform light work with limitations was supported by the record. The ALJ properly considered the relevant medical and other evidence in determining Plaintiff's "RFC". 20 C.F.R § 404.1545(a)(3) (providing ALJ can consider statements about what

claimants can do provided by medical sources in assessing a claimant's "RFC"). The ALJ

performed his duty, as the trier of fact, and weighed the evidence when assessing Plaintiff's

"RFC". *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ properly

considered the record and substantial evidence supports his conclusion on this issue.

## II.     THE COMMISSIONER ERRED IN ASSIGNING AN "RFC" NOT SUPPORTED BY THE EVIDENCE.

The Plaintiff argues that the Commissioner erred in formulating a residual functional

capacity ("RFC") assessment that is not supported by any of the evidence.  After properly

assessing Plaintiff's "RFC", the ALJ found that Plaintiff could not perform her past relevant

work (Tr. 22 Finding 6). Therefore, the ALJ had to determine if Plaintiff could perform

other work. 20 C.F.R. § 404.1520 (f),(g); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.

1999). The ALJ utilized the testimony of the Vocational Expert ("VE") and the framework

of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, to conclude that a

significant number of jobs existed in the national economy that Plaintiff could perform given

her "RFC"and other vocational characteristics (Tr. 23 Finding 10; Tr. 555-56).

In response to the ALJ's hypothetical question, the "VE" identified examples of

jobs that an individual with Plaintiff's vocational characteristics could perform, which

the ALJ included in his decision (Tr. 23 Finding 10; Tr. 555-56). The "VE's" testimony

was based upon a consideration of all the relevant evidence and in response to a

hypothetical question that fairly set out all of Plaintiff's reasonable limitations. The

ALJ, therefore, properly relied on the "VE's" testimony to find that Plaintiff could perform other work. *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987). Plaintiff failed to prove that she could not perform the jobs cited by the "VE" and the ALJ. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (holding that a claimant must prove that she is unable to perform the jobs listed by the Commissioner). Substantial evidence thus supports the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Social Security Act.

Plaintiff contends the ALJ was required to specify the frequency with which she could alternate sitting and standing. The ALJ's "RFC" finding and hypothetical question to the "VE" is that the ALJ contemplated a sit/stand option at will. Plaintiff failed to suggest in any way that the ALJ's "RFC" finding and hypothetical question could possibly be interpreted in any other way.  Thus, the "VE" did not ask the ALJ to clarify the frequency with which Plaintiff needed to sit or stand, indicating that the "VE" did not need further information to identify jobs Plaintiff could perform (Tr. 555-56).

As the Eleventh Circuit has stated, "[a]lthough the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at [the claimant's] own volition." *Williams v. Barnhart*, No. 04-16173, 2005 WL 1943186, at *4 (11th Cir. 2005) (unpublished disposition).

This Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). The Commissioner's factual findings are conclusive if supported by substantial evidence. *Martin,* 894 F.2d at 1259; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). The ALJ applied the correct legal standards in evaluating Plaintiff's case and substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

C.     **CONCLUSION**

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED.**   The Clerk of the Court is directed to enter judgment and thereafter close the file.

**DONE AND ENTERED** in Chambers at Fort Myers, Florida, this 8th  day of December,  2010.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
Susan Roark Waldron, A.U.S.A.
Carol Avard, Esquire

-20-